## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No.: _____

ARTIFICIAL INTELLIGENCE IMAGING
ASSOCIATION, INC.,

      Plaintiff,

v.

MVISION AI, INC.

      Defendant.

_____/

### COMPLAINT FOR PATENT INFRINGEMENT,
### UNJUST ENRICHMENT AND INJUNCTIVE RELIEF

Plaintiff Artificial Intelligence Imaging Association, Inc. ("AIIA" or "Plaintiff"), by
and through undersigned counsel, sues defendants Defendant Mvision AI ("Mvision" or
"Defendant") and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement under the Patent Laws of the United
   States, 35 U.S.C. § 271(a)-(c). Defendant directly infringes by making, using,
   selling, and offering to sell its GBS Contour+ software to healthcare providers in
   the United States.

### THE PARTIES

2.  Plaintiff AIIA is a Florida corporation with a principal place of business at 8875 Hidden River Parkway, Tampa, Florida 33637. AIIA is the assignee and current owner of all rights, title, and interest in U.S. Patent No. 11,257,272 ("the '272 Patent"), including the right to enforce the patent and pursue remedies for infringement. Upon information and belief, the assignment has been recorded with the U.S. Patent and Trademark Office.

3.  Defendant Mvision AI is a Finnish company with a principal place of business at Länsikatu 15, 80110 Joensuu, Finland. Mvision is registered as a foreign corporation doing business in Florida (Filing No. F22000007697) and maintains a registered agent at Legal Inc. Corporate Services, Inc., 476 Riverside Avenue, Jacksonville, FL 32202. Upon information and belief, Mvision has marketed and sold its GBS Contour+ software to hospitals in Florida, including Tampa General Hospital and Orlando Regional Medical Center in 2024.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 271.

5.  This Court has personal jurisdiction over Mvision pursuant to Florida's long arm statute, Fla. Stat. § 48.193(1)(a)(1), (2), and (6), because Mvision: (1) operates, conducts, engages in, and carries on business in Florida by marketing and selling

its GBS Contour+ software to healthcare providers in the state; (2) is registered to do business in Florida (Filing No. F22000007697) and maintains a registered agent at Legal Inc. Corporate Services Inc., 476 Riverside Avenue, Jacksonville FL 32202; (3) has sold and/or offered for sale its GBS Contour+ software to Florida based customers, including hospitals such as Tampa General Hospital and Orlando Regional Medical Center; and (4) has, upon information and belief, provided post sale services such as installation support, technical assistance, or product training within Florida. These acts constitute purposeful availment of the Florida market, and this action arises directly from those contacts. See *Waite v. All Acquisition Corp., 901 F.3d 1307, 1312 (11th Cir.* 2018); *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

6. Defendant's contacts with Florida satisfy both prongs of Florida's personal jurisdiction analysis. First, the requirements of Fla. Stat. § 48.193 are met through Mvision's business activities in Florida, including marketing and selling its GBS Contour+ software to Florida healthcare providers, and offering associated technical support services. Second, these activities constitute sufficient minimum contacts to satisfy due process, as Mvision has purposefully availed itself of the privilege of conducting business in Florida through repeated and targeted interactions with the Florida healthcare market. The exercise of jurisdiction is reasonable because Mvision has deliberately marketed and sold its products to

Florida based institutions and continues to provide services supporting those installations. These activities demonstrate that Mvision "purposefully reached out beyond" its home jurisdiction to conduct business in Florida that gave rise to the patent claims at issue. See *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024–25 (2021).

7. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement in this district, including selling and providing the accused GBS Contour+ software to Florida healthcare institutions and offering related technical services. Plaintiff believes that installations and support activities related to Mvision's software have occurred within this district. However, to establish venue based on a "regular and established place of business," more specific factual development may be required. The presence of a registered agent in Miami, Florida, alone may not suffice. Plaintiff reserves the right to amend this Complaint following jurisdictional discovery to identify Defendant's physical locations, employees, and business operations in this district that constitute a regular and established place of business under 28 U.S.C. § 1400(b), consistent with the standards set forth in *In re Cray Inc.*, 871 F.3d 1355, 1359–60 (Fed. Cir. 2017); *In re Google LLC*, 949 F.3d 1338, 1343–44 (Fed. Cir. 2020); and *Celgene Corp. v. Mylan Pharm. Inc.*, 17 F.4th 1111, 1123–

4

24 (Fed. Cir. 2021). Alternatively, venue is proper because Defendant is a foreign corporation under 28 U.S.C. § 1391(c)(3).

## GENERAL ALLEGATIONS

8.  Defendant induces infringement by actively promoting and instructing its customers to use the GBS Contour+ software in an infringing manner, with specific intent to encourage infringement, as demonstrated through its detailed technical documentation, training materials, and customer support services that explicitly teach the infringing synthetic data generation methods. Defendant contributes to infringement by selling the GBS Contour+ software, which constitutes a material component of the patented invention, knowing it to be especially made for use in infringement of the '272 Patent, having no substantial non-infringing use, and constituting a material part of the invention.

9.  Plaintiff seeks damages, including lost profits, reasonable royalties, and enhanced damages under 35 U.S.C. § 284 for Defendant's willful and egregious infringement, and injunctive relief for Defendant's infringement of U.S. Patent No. 11,257,272 (the "'272 Patent").

10. Prior to filing this complaint, AIIA sent Mvision a formal demand letter on June 9, 2025, identifying the '272 Patent and asserting that Mvision's GBS Contour+ software infringes one or more of its claims. Despite this notice and AIIA's offer to

license the patent, Mvision has continued to promote and, upon information and belief, expanded sales of the accused product in Florida.

11. Plaintiff seeks preliminary and permanent injunctive relief because: (1) AIIA will suffer irreparable harm without an injunction, as Mvision's continued infringement directly competes with AIIA's offerings in the medical imaging market—all injuries that are difficult to quantify and cannot be remedied through monetary damages alone; (2) remedies available at law, including monetary damages, are inadequate to fully compensate for the long term competitive injury to AIIA; (3) considering the balance of hardships between the parties, equitable relief is appropriate because Mvision, upon information and belief, could modify or suspend use of the accused technology, whereas AIIA risks sustained loss of its competitive foothold; and (4) the public interest favors enforcement of patent rights and preserving fair competition, particularly where alternative technologies exist in the market. Plaintiff therefore seeks temporary and permanent injunctions enjoining Defendant from further infringing conduct, including making, using, selling, and offering to sell the accused software and services in the United States.

## THE PATENT IN SUIT

10. The United States Patent and Trademark Office issued U.S. Patent No. 11,257,272, titled "Generating Synthetic Image Data for Machine Learning," on February 22, 2022. A true and correct copy of the '272 Patent is attached hereto as **Exhibit 1.**

11. The '272 Patent claims methods for generating synthetic image data used to train machine learning models. Claim 1, for example, includes technical steps such as selecting medical imaging backgrounds from a database, incorporating 3D anatomical models, applying tissue-specific visual characteristics, and using parameters that simulate imaging equipment to generate synthetic training data.

12. AIIA is the assignee and current owner of the '272 Patent, including the right to enforce the patent and recover for past and ongoing infringement, and therefore has standing to bring this action.

**DEFENDANT'S DIRECT, INDUCED, AND CONTRIBUTORY INFRINGEMENT**

13. Mvision develops and distributes specialized software for radiotherapy planning, specifically its GBS Contour+ product. According to Mvision's website (https://mvision.ai/), GBS Contour+ is a comprehensive radiation oncology solution that employs artificial intelligence for automated contouring and treatment planning optimization. Based on technical documentation and marketing materials available as of May 15, 2025, AIIA has determined that the product incorporates synthetic data generation and machine learning training methods that practice the steps claimed in the '272 Patent. AIIA is continuing to investigate Mvision's practices and makes these allegations on information and belief, pending further discovery.

14. Based on information available from Mvision's public website and other sources, AIIA believes that Mvision's GBS Contour+ software uses synthetic data generation methods that correspond to the steps claimed in Claim 1 of the '272 Patent. AIIA has compared publicly described features of the GBS Contour+ product with the patented method and believes that the software includes components that are analogous to:

> (1) background imaging data;
>
> (2) 3D anatomical models;
>
> (3) texture or density pattern applications; and
>
> (4) simulation of imaging equipment parameters.

This comparison is based on publicly accessible information and AIIA's good faith interpretation of those descriptions.

15. Based on publicly available descriptions, technical documentation, and product demonstrations, Mvision's GBS Contour+ software implements specific technical features that precisely correspond to and practice each method step recited in Claim 1 of the '272 Patent. The software's synthetic data generation functionality performs the following steps:

- Receiving and processing MR image data and associated medical imaging libraries as training input;
- Constructs synthetic CT image scenes using 3D modeling and rendering techniques;
- Applies virtual imaging parameters that function similarly to camera settings;

- Rendering images as pixel-based outputs; and
- Compiles the resulting images into training datasets used to develop or improve deep learning models.

16. Mvision directly infringes under 35 U.S.C. § 271(a) by making, using, selling, or importing software in the U.S., including through customers such as the University of Florida Health System. Based on technical documentation and publicly available information, Mvision exercises direct control over and performs each step of the claimed method through its development, testing, and deployment of the GBS Contour+ software, including the synthetic data generation features. See *Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1022-23 (Fed. Cir.* 2015); *Centripetal Networks, Inc. v. Cisco Systems, Inc., 38 F.4th 1025, 1033-34 (Fed.* Cir. 2022)

17. On information and belief, Mvision actively induces infringement under 35 U.S.C. § 271(b) by specifically encouraging and providing detailed instructions to customers, including those in the United States, to use its GBS Contour+ software in a manner that directly infringes the '272 Patent. Mvision provides technical documentation, user instructions, and other implementation resources that facilitate use of the synthetic data generation features corresponding to elements of the patented method. Mvision had actual knowledge of the '272 Patent at least as of the date it received AIIA's demand letter. Despite this, Mvision continued to

promote and support the use of GBS Contour+ in a manner that practices the claimed method.

18. On information and belief, Mvision's publicly available promotional materials describe features of the GBS Contour+ software that align with the synthetic data generation capabilities claimed in the '272 Patent, including the use of MR data, anatomical modeling, and virtual imaging parameters to generate synthetic CT data for training purposes. These representations, coupled with Mvision's targeted marketing of GBS Contour+ for medical imaging applications in the United States, support an inference of specific intent to encourage use of the software in a manner that infringes. See *Commil USA, LLC v. Cisco Systems, Inc.*, *575 U.S. 632, 644-46 (2015); Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 843 F.3d 1315, 1332 (Fed*. Cir. 2016).

19. On information and belief, Mvision contributes to infringement under 35 U.S.C. § 271(c) by offering and providing the synthetic data generation module within its GBS Contour+ software. Specifically, this module implements each element of Claim 1 of the '272 Patent as evidenced by Mvision's product documentation showing: (1) background selection functionality for synthetic image generation, (2) 3D modeling capabilities for medical imaging, (3) texture application features, and (4) configurable virtual imaging parameters for synthetic data creation. This module is exclusively designed and marketed for synthetic data generation in

machine learning applications, with functionality that directly implements each element of the patented method. On further information and belief, this module is not a staple article of commerce and is not suitable for substantial non infringing use, as it is designed for and marketed exclusively as part of Mvision's synthetic CT generation workflow for medical imaging. See *In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1337-38 (Fed. Cir.* 2012); *Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed.* Cir. 2010). Additional confirmation of these features may be found through discovery, including software specifications and internal architecture documents. Based on Mvision's widespread deployment and licensing of GBS Contour+ software to healthcare institutions across the United States, AIIA has suffered significant monetary damages from Mvision's infringement. AIIA seeks damages of at least $100 million for Mvision's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284.

## IRREPARABLE HARM AND CAUSAL NEXUS

20. AIIA will suffer irreparable harm absent injunctive relief as a result of Mvision's ongoing infringement. AIIA and Mvision compete in the same field of medical imaging AI, particularly in developing and offering software solutions for generating synthetic image data to support machine learning applications. AIIA has invested millions of dollars in researching, developing, and patenting its

synthetic data generation technology, which represents the foundation of its competitive position and commercial offerings in the medical imaging AI market. Mvision's unauthorized use of the patented method threatens to erode AIIA's market share, reduce licensing opportunities, and diminish the value of its intellectual property, causing harm that cannot be fully remedied through monetary damages alone.

21. Mvision's unauthorized use of AIIA's patented technology has directly caused quantifiable harm to AIIA, including documented erosion of market position, systematic pricing pressure, and significant loss of competitive advantage in the medical imaging AI sector. On information and belief, some healthcare customers have chosen Mvision's offering due in part to its synthetic data generation features. These developments have contributed to reputational harm and impaired AIIA's ability to command premium pricing based on its innovation. As a result, AIIA's ability to maintain its market position has been materially and irreparably harmed. Monetary damages alone are insufficient to address these cumulative harms. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015); *Bio-Rad Labs. Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1378 (Fed. Cir. 2020).

22. AIIA is informed and believes, and on that basis alleges, that Mvision knew or should have known that its GBS Contour+ software was especially made or adapted to facilitate infringement of the '272 Patent, as evidenced by: (1) specific

product documentation describing synthetic training capabilities that implement each element of Claim 1, (2) promotional materials demonstrating the software's specialized synthetic data generation features, and (3) technical specifications showing the module's dedicated purpose for medical imaging AI training. These materials suggest that the software was designed to achieve results aligned with the patented process and, based on current information, lacks substantial non-infringing uses. See *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018); *Nielsen Co. v. Comscore, Inc.*, 819 F. Supp. 2d 589, 602 (E.D. Va. 2011).

## INJUNCTIVE RELIEF

23. Under the four-factor test established in eBay Inc. v. MercExchange, AIIA will suffer irreparable harm absent an injunction because Mvision's infringement directly causes AIIA to lose market share, customer relationships, and licensing opportunities in the AI medical imaging market. First, regarding irreparable harm, Mvision's unauthorized use of AIIA's patented synthetic training technology enables direct competition for the same hospital and healthcare provider customers, resulting in the loss of not only immediate sales but also long-term relationships and follow-on business. The specialized nature of medical AI implementations means these relationships, once lost, are extremely difficult to recover due to high switching costs and multi-year integration commitments. Second, monetary damages are inadequate because the harm extends beyond just

lost sales to include price erosion, reputational damage, and lost market momentum in a rapidly evolving field. Third, the balance of hardships strongly favors AIIA because Mvision can implement non-infringing alternatives while AIIA faces permanent market displacement and damage to its innovation-based business model. Fourth, the public interest supports an injunction because protecting valid patent rights in medical AI technology encourages continued investment in healthcare innovation that ultimately benefits patients. See *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015).

24. Mvision's alleged infringement is willful and egregious under *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). On information and belief, Mvision had pre-suit knowledge of the '272 Patent based on publicly available indicators of its industry monitoring, such as attendance at medical imaging conferences and review of competitor offerings. Despite this knowledge, Mvision continued marketing and deploying features that align with the patented technology, without seeking a license or altering its software. Its post-filing conduct—including the continued promotion and use of the accused synthetic training features—demonstrates deliberate disregard for AIIA's patent rights. Such behavior supports a finding of willfulness and may justify enhanced damages under 35 U.S.C. § 284. See *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1308 (Fed. Cir. 2019).

14

25. AIIA has sustained significant and irreparable economic harm from Mvision's infringing activities that cannot be adequately compensated by monetary damages alone. Based on AIIA's internal licensing efforts and understanding of procurement outcomes, healthcare systems such as the University of Florida Health System, ultimately selected Mvision's competing product. Upon information and belief, procurement decision makers cited synthetic data generation capabilities corresponding to the '272 Patent as a key selection factor. These lost opportunities represent not just monetary losses, but lasting harm to AIIA's competitive position, client relationships, and role in shaping innovation standards within the medical AI field. In this relationship-driven market, lost customer engagements significantly impact long-term business development and reputation.

## <u>COUNT I: PATENT INFRINGEMENT</u>
(Violation of 35 U.S.C. § 271(a) – Infringement of U.S. Patent No. 11,257,272,)

26. Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through twenty-five (25) as if fully restated herein.

27. Plaintiff is the owner of U.S. Patent No. 11,257,272. This Patent claims methods for generating synthetic image data used to train machine learning models.

28. On information and belief, Defendant's infringement includes unauthorized replication of Plaintiff's patented methods without license or permission.

29. Defendant's infringement is willful, knowing, and intentional, as it was aware of Plaintiff's patent rights, and further Defendant was aware of or willfully blind to Plaintiff's patent rights through notice of the pending application and subsequent issuance of the Patent.

30. As a result of Defendant's infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and injunctive relief to prevent further infringement.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief: (1) An award of damages of at least $100 million to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; (2) A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and (3) An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## COUNT II: PATENT INFRINGEMENT

### (Violation of 35 U.S.C. § 271(b) – Induced Infringement)

31. Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through twenty-five (25) as if fully restated herein.

32. Defendant has indirectly infringed and continues to indirectly infringe the Patent by inducing others to directly infringe, literally and/or by the doctrine of equivalents.

33. Defendant has taken active steps, directly, indirectly, or through contractual relationships with others, with the specific intent to cause them to use its product in a manner that infringes one or more claims of the Patent. Such steps include distributing labels and instructions, advertising and promoting the product in an infringing manner, and providing technical support for infringing use.

34. Defendant has been performing these steps with the knowledge of the Patent and with the knowledge and specific intent that the induced acts constitute infringement.

35. Defendant's infringement of the Patent is ongoing.

36. As a result of Defendant's induced infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages, attorneys' fees, and injunctive relief.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief: (1) An award of damages of at least $100 million to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; (2) A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further

acts of infringement; and (3) An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## Count III – PATENT INFRINGEMENT
### (Violation of 35 U.S.C. § 271(c) – Contributory Patent Infringement)

37. Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through twenty-five (25) as if fully restated herein.

38. Defendant has indirectly infringed and continues to indirectly infringe the Patent by contributing to the infringement of the Patent.

39. Defendant's product has special features designed for infringing use, including label instructions, and has no substantial non-infringing uses. These features constitute a material part of the invention.

40. Defendant has materially contributed to third parties' infringement of the Patent by making, distributing, offering for sale, and selling the product for use in a manner that infringes one or more claims of the Patent.

41. Defendant's contributory infringement is ongoing.

42. As a result of Defendant's contributory infringement, Plaintiff has suffered damages, including lost profits, lost market share, price erosion, and irreparable harm to its reputation. Plaintiff seeks enhanced damages, attorneys' fees, and injunctive relief.

43. WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief: (1) An award of damages of at least $100 million to compensate AIIA for Mvision's alleged

infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; (2) A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and (3) An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

## COUNT IV: INJUNCTIVE RELIEF

44. Plaintiff AIIA incorporates by reference the allegations set forth in Paragraphs one (1) through twenty-five (25) as if fully restated herein.

45. AIIA is entitled to a preliminary injunction pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65. A preliminary injunction is appropriate where the plaintiff demonstrates:

    A.    A likelihood of success on the merits;

    B.    A likelihood of irreparable harm in the absence of preliminary relief;

    C.    That the balance of equities favors the plaintiff; and

    D.    That an injunction serves the public interest.

    See *eBay Inc. v. MercExchange*, 547 U.S. 388, 391 (2006); *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 926–30 (Fed. Cir. 2012).

46. Based on the specific facts alleged above regarding AIIA's patent rights, competitive position, and Mvision's conduct, AIIA satisfies each element required for a preliminary injunction:

- <u>Success on the Merits</u>: Mvision's GBS Contour+ product directly infringes Claim 1 of the '272 Patent by implementing each element of the claimed synthetic data training method in its software. Mvision also indirectly infringes through inducement under 35 U.S.C. § 271(b) by knowingly providing detailed instructions and actively encouraging customers to use the infringing features, with specific knowledge of the '272 Patent and clear intent that customers perform the patented method. Additionally, Mvision contributes to infringement under 35 U.S.C. § 271(c) by providing specialized software components that have no substantial non infringing uses, as evidenced by Mvision's own product documentation. The '272 Patent is presumed valid, and no substantial question of invalidity has been raised. *See Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); *Blephex, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022).

- <u>Irreparable Harm and Inadequacy of Legal Remedies</u>: AIIA faces concrete and irreparable harm from Mvision's continued use of the patented synthetic data training method. Specifically, AIIA suffers ongoing harm through lost licensing opportunities, erosion of market share, and diminished reputation in the medical imaging AI

market. The relationship driven and highly specialized nature of this market means that these losses, particularly in customer relationships and market position, cannot be adequately quantified or remedied through monetary damages alone. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015); *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013).

- Balance of Hardships: The balance of hardships favors AIIA. While Mvision would only need to temporarily suspend specific infringing features of its product, AIIA continues to suffer permanent and irreversible damage to its core market position and licensing model. Mvision, by contrast, has the resources and technical capabilities to pursue non infringing alternatives. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).

- Public Interest: The public interest strongly favors injunctive relief because: (1) protecting valid patents in the AI medical sector encourages innovation and ensures continued investment in life saving technologies, (2) maintaining strong intellectual property rights is particularly crucial in the emerging field of medical AI where development costs are substantial, and (3) the requested

injunction would not disrupt patient care as alternative non infringing products remain available in the market. While temporary competitive disruption may occur, the long term benefits of patent protection outweigh any short term effects. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1331 (Fed. Cir. 2008).

46. Pursuant to Fed. R. Civ. P. 65(d), AIIA respectfully requests that the Court enter a preliminary injunction enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them, from engaging in the following acts during the pendency of this action:

- Manufacturing, marketing, distributing, selling, or licensing the GBS Contour+ software, or any product not more than colorably different from it, that incorporates the accused synthetic data generation features;
- Encouraging, instructing, or enabling customers to use the GBS Contour+ software in a manner that practices the patented method;
- Publishing documentation or promotional materials that depict or endorse the use of the accused synthetic data generation features.

WHEREFORE, Plaintiff, AIIA, respectfully seeks the following relief: (1) An award of damages of at least $100 million to compensate AIIA for Mvision's alleged infringement of the '272 Patent, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; (2) A permanent injunction under 35 U.S.C. § 283 enjoining Mvision from further acts of infringement; and (3) An award of attorneys' fees under 35 U.S.C. § 285 based on the exceptional nature of this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff AIIA respectfully alleges that Defendant Mvision maintains a regular and established place of business within this District and has committed acts of infringement in this District by marketing, selling, and supporting the GBS Contour+ software for use by healthcare providers located in Florida. Upon information and belief, Mvision has purposefully directed its business activities into this District by: (1) deriving substantial revenue from specific Florida based customers including University of Florida Healthcare Systems, (2) maintaining dedicated technical support staff and resources for users in this District, and (3) engaging in continuous commercial relationships with specific healthcare institutions. Accordingly, Plaintiff respectfully requests that the Court enter judgment in its favor and grant the following relief:

A. Enter judgment that Defendant has infringed one or more claims of U.S. Patent No. 11,257,272 under 35 U.S.C. §§ 271(a), (b), and/or (c);

B. Enter a preliminary and permanent injunction under 35 U.S.C. § 283 and Fed. R. Civ. P. 65, enjoining Defendant, its officers, agents, employees, and all persons acting in concert with them, from continued infringement of U.S. Patent No. 11,257,272 through the manufacture, marketing,

distribution, or support of the GBS Contour+ software or any product not more than colorably different.

Plaintiff has begun to suffer irreparable harm, including loss of market position, erosion of customer relationships, and diminished licensing opportunities in the medical AI software sector.

Plaintiff asserts that these harms cannot be adequately remedied by monetary damages and are likely to continue absent injunctive relief, warranting equitable intervention consistent with Apple Inc. v. Samsung Elecs. Co., 809 F.3d 633 (Fed. Cir. 2015) and eBay Inc. v. MercExchange, 547 U.S. 388 (2006);

C. Award damages adequate to compensate for Defendant's infringement, including lost profits and reasonable royalties, and, if supported by discovery, enhanced damages under 35 U.S.C. § 284. Plaintiff believes Defendant received pre suit notice of the '272 Patent and continued infringing conduct thereafter. Plaintiff further alleges, on information and belief, that Defendant copied features of the patented technology despite knowing of the patent and failed to implement available non-infringing alternatives. Plaintiff reserves the right to supplement the record with specific documentation supporting these allegations during discovery;

D. Award attorneys' fees and taxable costs incurred in this action;

E.   Award pre- and post-judgment interest as permitted by law;

F.   Award reasonable attorneys' fees and costs under 35 U.S.C. § 285, should the Court find this case exceptional based on the totality of Defendant's conduct; and

G.   Award damages of at least $100 million for Defendant's infringement, including lost profits and reasonable royalties, pursuant to 35 U.S.C. § 284; and

H.   Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

DATED: September 1, 2025

Respectfully submitted,

**THE STRATEGIC LEGAL GROUP, PLLC**
Attorneys for Plaintiff Artificial Intelligence
Imaging Association Inc.
300 S.E. 2nd Street
Suite 600
Fort Lauderdale, FL 33301
(954) 323-6712 (office)
legalmail@thestrategiclegalgroup.com

By : _____
      Carl D. Berry
      Fla. Bar No. 0081132
      cberry@thestrategiclegalgroup.com